UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2004 FEB 11 P 2: 39

U.S. DISTRICT COURT
DISTRICT OF MASS.

------------------------------------x
Green Mountain Realty Corp.                         :

          Plaintiff,                                     :

vs.                                                 :    CASE NO. 04-40021-___

The Town of Sturbridge of Massachusetts, the        :
Zoning Board of Appeals of the Town of
Sturbridge, Massachusetts, and Ginger Peabody,      :
Theophile Beaudry, Mary Blanchard, Jeff Bonja,
Robert Cornoni, Patricia Jeffries and Gary Jeznach, :
in their capacities as Members of the Zoning Board
of Appeals of the Town of Sturbridge,               :
Massachusetts
                                                    :

          Defendants.                                    :

                                                      :
------------------------------------x

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED___✓___
LOCAL RULE 4.1___✓___
WAIVER FORM___✓___
MCF ISSUED___✓___
BY DPTY. CLK._____
DATE 2-11-04

## COMPLAINT

      Plaintiff, Green Mountain Realty Corp. ("GMRC"), by its attorneys, Devine, Millimet & Branch, P.A., complains against the defendants as follows:

      1.     GMRC brings this action because of the unreasonable refusal of the Town of Sturbridge, Massachusetts and its Zoning Board of Appeals (hereinafter collectively referred to as "Sturbridge" or the "Town") to allow GMRC to construct a 130-foot tall wireless antenna facility. The Town's refusal, through its Zoning Board of Appeals (the "ZBA"), to allow GMRC to construct this wireless antenna facility and, instead, to permit only a 100 foot tall facility, violates Section 704 of the Telecommunications Act of 1996, 42 U.S.C. §337(c)(7)(B) (the "TCA"), in that the refusal is not based on substantial evidence contained in a written record and in that it effectively prohibits federally-licensed providers of wireless telecommunications services from providing those services in a significant portion of Sturbridge. In addition, the

decision to allow a facility not greater than 100 feet in height at the proposed location and certain other conditions imposed by the ZBA are unreasonable and arbitrary and in excess of its authority, and the decision must be annulled. GMRC seeks an injunction directing the Town to allow construction of the proposed facility to proceed without further delay.

### **PARTIES**

2.  GMRC is a corporation organized and existing under the laws of the State of New Hampshire with a place of business in Wolfeboro, New Hampshire. It is engaged in the business of developing sites for the deployment of "personal wireless services facilities" as that term is defined by federal law, 47 U.S.C. § 332 (c)(7)(C)(ii). It engages in such activities both on its own behalf and on behalf of licensed providers of "personal wireless services" ("PWS") as that term is defined by federal statute, 47 U.S.C. §332(c)(7)(C)(i).

3.  Among the PWS providers with whom GMRC has business relationships are Nextel Communications of the Mid-Atlantic, Inc. d/b/a Nextel Communications ("Nextel") and with Omnipoint Holdings, Inc., a subsidiary of T-Mobile ("T-Mobile"). Several years ago, both Nextel and T-Mobile requested GMRC to locate and develop a site for the deployment of a PWS facility in the northwestern portion of Sturbridge.

4.  The Town is a municipal corporation having its principal place of business at Town Hall, 308 Main Street, Sturbridge, Massachusetts, 01566.

5.  The ZBA is an agency or instrumentality of the Town of Sturbridge, Massachusetts and is the municipal body responsible for the decision which led to this action.

6.  The individual defendants are sued in their capacities as members of the ZBA.

## JURISDICTION AND VENUE

7.  This civil action arises under those sections of the TCA which provide that any decision denying permission to construct wireless antenna facilities must be based on "substantial evidence contained in a written record," 47 U.S.C. §332(c)(7)(B)(iii); that local government regulation shall not have the effect of prohibiting the provision of PWS, 47 U.S.C. 332(c)(7)(B)(i)(II); and, that "[a]ny person adversely affected by any final action or failure to act by a state or local government or instrumentality thereof that is inconsistent with this paragraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis." 47 U.S.C. §332(c)(7)(B)(v).

8.  Jurisdiction is based on 28 U.S.C. § 1331 which grants this Court original jurisdiction over all civil actions arising under the laws or Constitution of the United States. In addition, the Court has supplemental jurisdiction over the plaintiff's State law claim.

9.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), in that the defendants reside in this district and pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred here.

## ALLEGATIONS COMMON TO ALL COUNTS

10. The TCA was enacted in July 1996 in order to promote the rapid deployment in the United States of advanced telecommunications technologies, including PWS. To that end, the statute provides that local government regulation may not prohibit or have the effect of prohibiting the provision of PWS and imposes other substantive and procedural limits upon the ability of local governments to regulate PWS facilities.

11. Nextel is a provider of enhanced specialized mobile radio services, a type of personal commercial mobile radio services ("CMRS") which are within the definition of PWS set forth at 47 U.S.C. §332(c)(7)(C)(i). Nextel is licensed by the FCC to provide CMRS in certain markets, including Massachusetts.

12. T-Mobile also is a provider of telecommunications services which are within the federal definition of PWS, and also is licensed by the federal government to provide such services in certain markets, including Massachusetts.

13. The PWS networks of both Nextel and T-Mobile require deployment of antennas throughout the area to be covered, which are connected to receivers and transmitters that operate in a limited geographic area known as a "cell." The providers' portable telephones operate by transmitting and receiving low power radio frequency signals to and from these cell sites. The signals are transferred to and from ground telephone lines and routed to their destinations by sophisticated electronic equipment. The size of the area served by each cell site is dependent on several factors, including the number of antennas used, the height at which the antennas are deployed, the topography of the land, vegetative cover and natural or man-made obstructions in the area. As customers move throughout the service area, the transmission from the portable unit is automatically transferred to the closest antenna facility without interruption in service, provided that there is overlapping coverage from the cells.

14. In order for the Nextel and T-Mobile PWS networks to function effectively, there must be some overlapping coverage between adjoining cells to allow for the transfer or "hand-off" of calls from one cell to another and to avoid disconnection or "dropped" calls. In other words, antennas must be strategically located within the targeted area in order to provide sufficient radio frequency coverage, connectivity with surrounding sites, and adequate service.

Antennas also must be located high enough above ground level to allow transmission (or "propagation") of the radio frequency signals above trees, buildings and natural or man-made other structures that may obstruct the signals. Areas without adequate radio frequency coverage have substandard or no wireless service.

15. Several years ago, Nextel and T-Mobile requested GMRC to develop a site in the northwest portion of Sturbridge so that they each could provide adequate PWS to this area, which includes the important thoroughfare of Interstate 90 (the Massachusetts Turnpike) and other areas in which customers of Nextel and T-Mobile live, work and travel.

16. Under the Sturbridge zoning ordinance by-law (the "By-law"), PWS facilities are subject to stringent regulations. They are only allowed in certain areas, are limited to a maximum height of 130 feet and must satisfy various other engineering and design criteria. Even in the areas where such facilities are allowed, the Town's ZBA must grant a special permit and the project also must receive site plan approval from the Town's Planning Board.

17. With the engineering requirements of the Nextel and T-Mobile networks in mind, and also considering the strictures of the Sturbridge By-law, GMRC explored possible locations for a new facility. GMRC ultimately determined that, for a variety of reasons, the 126 Clark Road site would be ideal. GMRC obtained permission from the owner of the parcel to construct an antenna facility.

18. GMRC's proposed PWS facility would be within one of the few areas in the Town where such facilities a use allowed by special permit. The proposed facility also would comply with the 130 height restriction.

19. On or about June 20, 2003, GMRC submitted an application for a special permit with the Sturbridge ZBA.

20. The ZBA held public hearings with regard to GMRC's application for a special permit on September 10, September 24, October 8, October 15, November 12, November 19 and December 11, 2003.

21. During each of these hearings, other than the October 8 and December 11 hearings, GMRC and others presented testimony and other evidence. GMRC's evidence explained the need for this facility and the absence of feasible alternatives. In this regard, both T-Mobile and Nextel submitted specific engineering data identifying significant coverage gaps in the vicinity and explaining the minimum heights at which their antennas need to be deployed in order to close those coverage gaps. GMRC also submitted photosimulations which demonstrated that its facility would have minimal visual impact.

22. At the October 15 hearing, the Town's independent expert presented a written report based on his review of the T-Mobile and Nextel submissions. He agreed that T-Mobile's data demonstrated the need for the facility as proposed. Although he stated that he could not "verify" Nextel's data, he did not contradict any of Nextel's or GMRC's positions.

23. In short, both in its documentary submissions and during the lengthy hearing process, GMRC and the licensed PWS providers Nextel and T-Mobile presented substantial evidence to show that the proposed facility met all requirements under federal, state and local law for the requested special permit. GMRC also demonstrated that the proposed facility is the only feasible alternative for meeting the need of licensed PWS carriers to provide coverage in the area in question.

24. The only evidence presented in opposition to GMRC's application consisted of the testimony of a few neighbors and letters submitted by various local residents, all of which expressed only vague aesthetic concerns which would apply to any tower.

25. Despite the minimally intrusive nature of the proposed GMRC facility and the absence of any feasible alternatives, and despite the absence of any specific basis for opposition to the facility, the ZBA voted to deny GMRC's application for a special permit for a 130 foot facility and instead voted to grant permission for only a 100 foot tall facility. This decision was reduced to writing and filed with the Town Clerk on January 22, 2004 (the "Decision," a copy of which is annexed hereto as Exhibit A).

26. In addition to limiting height to 100 feet, the ZBA's "approval" contained several conditions, including the condition that "[a]ny modification" will require a new special permit, even though the facility has not yet received site plan approval and even though no plans for a 100 foot facility even exist; thus, some "modifications" no doubt will be required. The Sturbridge By-law expressly limits the type of modifications for which a new special permit could be required, yet the ZBA's decision did not limit the requirement for a new permit to only the modifications specified in the By-law. What is more, the Town is expected to eliminate the Clark Road site from its "overlay district," so not only will a new application be required, but any such new application for a facility at that location is doomed to fail.

### AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF 47 U.S.C. § 332 (c)(7)(B)(iii)

27. GMRC repeats, realleges and incorporates herein by reference the allegations of paragraphs 1 through 26 of this Complaint as though fully alleged herein.

28. The Town's denial of authorization to GMRC to construct a 130 foot tall facility at 126 Clark Road and the conditions it imposed upon its approval of a 100 foot facility were not supported by substantial evidence contained in a written record as required by the TCA, 47 U.S.C. § 332 (c)(7)(B)(iii).

29. GMRC is entitled to an injunction directing the Town to grant the special permit and all other permits and approvals necessary for construction of the proposed facilities to proceed.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF 47 U.S.C. § 332 (c)(7)(B)(i)(I)

30. GMRC repeats, realleges and incorporates herein by reference the allegations of paragraphs 1 through 29 of this Complaint as though fully alleged herein.

31. By denying GMRC's permission to construct a 130 foot tall antenna facility at 126 Clark Road and by imposing unreasonable conditions upon the approval of a 100 foot facility, the Town and the ZBA have effectively prohibited Nextel and T-Mobile from providing PWS in the northwest portion of Sturbridge.

32. GMRC is entitled to an injunction directing the Town to grant the special permit and all other permits and approvals necessary for construction of the proposed facilities to proceed.

## AS AND FOR A THIRD CAUSE OF ACTION
## FAILURE TO COMPLY WITH STATE AND LOCAL LAW

33. GMRC repeats, realleges and incorporates herein by reference the allegations of paragraphs 1 through 32 of this Complaint as though fully alleged herein.

34. The decision of the ZBA is contrary to the evidence and the conditions imposed are contrary to federal, state and local law.

35. The decision, accordingly, is unreasonable, arbitrary and in excess of the ZBA's authority and must be annulled.

**WHEREFORE**, GMRC respectfully requests that this Honorable Court issue the following relief on an expedited basis as required by 47 U.S.C. §332(c)(7)(B)(iv):

A. Declare that the decision of the Town's ZBA was not supported by substantial evidence contained in a written record and, therefore, violates the TCA and is invalid and overturned;

B. Declare that Town's regulatory scheme, as applied by its ZBA, effectively prohibits PWS carriers from providing service and therefore violates the TCA and is invalid and overturned;

C. Declare that the decision of the ZBA is contrary to state and local law, in excess of its authority, unreasonable and arbitrary, and is therefore annulled;

D. Issue an injunction ordering the Town and its instrumentalities immediately to issue the special permit and all other approvals and permits necessary to allow construction of the proposed facilities to begin without further delay; and

E. Grant such other and further relief as justice and equity may require.

Respectfully submitted,

**GREEN MOUNTAIN REALTY CORP.**

By its attorneys,

**DEVINE, MILLIMET & BRANCH,
PROFESSIONAL ASSOCIATION**

Dated: February 11, 2004         By: _/s/ Steven E. Grill_
Steven E. Grill, Esquire
111 Amherst Street, P.O. Box 719
Manchester, New Hampshire 03105-0719
Telephone: (603) 669-1000

J:\wdox\docs\clients\14962\67890\M0552720.DOC

# EXHIBIT A



# Town of Sturbridge
## Zoning Board of Appeals

Theophile Beaudry
Mary Blanchard
Jeffrey Bonja
Robert Cornoni
Patricia Jeffries
Ginger Peabody, Chairman

Nancy A. Campbell, Clerk



JAN 2 2 2004

**TOWN OF STURBRIDGE**
**ZONING BOARD OF APPEALS**

**NOTICE OF SPECIAL PERMIT DECISION**

Case number 09-10-03-1
Green Mountain Realty Corp.

COPY

Date: January 21, 2004

Notice is hereby given that the Zoning Board of Appeals, acting as the Special Permit Granting Authority, after public hearings held on September 10, September 24, October 15, November 12 and November 19, 2003 has granted a Special Permit under Chapter Twenty-four, Section 24.09, and Chapter Twelve, Section 12.03 (c), of the Town Zoning Bylaws to permit the construction of a 100 foot monopole tower and related wireless equipment for property located at 126 Clark Road. The record title standing in the name Daniel and Nancy Ryder, by a deed recorded in the Worcester Registry of Deeds, Book 15340, Page 21. The petitioner is:

Green Mountain Realty Corp., applicant
Nextel Communications of the Mid-Atlantic, Inc., co-applicant
Omnipoint Holding Company, Inc., a division of T-Mobile, co-applicant
P.O. Box 10
Wolfboro Falls, NH 03896-0356

The decision of said Board is on file in the Office of the Town Clerk, Sturbridge, Massachusetts. An appeal from the decision of the Special Permit Granting Authority may be made by any person aggrieved pursuant to M.G.L. Chapter 40A, section 17, as amended, within twenty (20) days after the date of filing of this Notice and of the Decision in the office of the Town Clerk.

For the Zoning Board of Appeals:   _Nancy A. Campbell_
Nancy A. Campbell, Clerk

*(Copies to be sent to the petitioner/applicant/appellant and owner, if different, and to all parties in interest.)*

---

Town Hall, 308 Main Street
Sturbridge, MA 01566

ZONING BOARD OF APPEALS
TOWN OF STURBRIDGE

SPECIAL PERMIT DECISION

Case number 09-10-03-1
Green Mountain Realty Corp.

TO WHOM IT MAY CONCERN:

In accordance with Chapter Twenty-four of the Town of Sturbridge Zoning Bylaw, the Town of Sturbridge Zoning Board of Appeals has granted the petition of Green Mountain Realty Corp. for a special permit under Chapter Twenty-four, Section 24.09, and Chapter Twelve, Section 12.03 (c), of the Town Zoning Bylaws to permit the construction of a 100 foot monopole tower and related wireless equipment at 126 Clark Road, Sturbridge, MA. Said premise is situated in a zoning district classified under the Bylaw as Suburban Residential, is owned by the Daniel and Nancy Ryder of 12 Wildwood Lane, Fiskdale, MA, and is more particularly described in a deed recorded with the Worcester District Registry of Deeds in Book 15340, Page 21.

On September 10, September 24, October 15, November 12 and November 19, 2003, public hearings were held at the Town Hall, Main Street, Sturbridge, MA, after posting, publication and notice to abutters and others as required by Massachusetts General Laws Chapter 40A, as amended. Present at all sessions were board members Theophile Beaudry, Mary Blanchard, Jeffrey Bonja, Robert Cornoni and Patricia Jeffries. Ginger Peabody recused herself from the Board during the process of this application.

After the close of the public hearings the Special Permit Granting Authority on January 14, 2004 granted the requested Special Permit with the following members voting as follows with respect to the requested Special Permit. Members voting to grant the Special Permit were Theophile Beaudry, Mary Blanchard, Jeffrey Bonja, Robert Cornoni and Patricia Jeffries. There were no members voting against the granting of the special permit.

The Special Permit Granting Authority granted a Special Permit to Green Mountain Realty Corp. to allow the construction of a 100 foot monopole tower and related wireless equipment at 126 Clark Road, Assessor's map #24 and 25, lot 366, Worcester Registry of Deeds, Plan # 17160, page 95 based on the following findings:

1) The proposed site is located in the Wireless Communication Overlay District;

2) The proposed site satisfies the Zoning Bylaws section 12.03(c) requirements relative to the St. Anne's water tank (Zoning Bylaws Section 12.03(a);

3) There are currently only two active carriers for the proposed cell tower;

4) The St. Anne's water tank will cover Route 20, but not the Massachusetts Turnpike; The T3 site would cover the Massachusetts Turnpike, but not Route 20;

5) The T3 site is town property and might be available for development;

6) The applicant has not approached the Town regarding the T3 site;

7) The Town has not issued an Request for Proposal (RFP) for the T3 site;

8) The Town had not issued an RFP for the St. Anne's water tank, but was approached by an interested party without the presence of an RFP;

9) The height of the tower could be determined by the Board based on facts presented, but in no case should it exceed 130 feet per Zoning Bylaws;

10) The general presence of the tower would be a detriment to the community due to visual impact. The visual impact was proportional to the height of the tower;

11) The application allowed for transmitter locations at 130, 120, 110, 100 and 90 feet. The applicants would occupy the top two locations, but the bottom two locations were considered technically viable;

12) The transmitter spacing did not have to be ten feet apart;

13) The applicant's signal models were valid, but did include a certain amount of uncertainty (could be up to 10 dB's) due to limitations in assumptions;

14) The difference in the signal quality between 130 feet and 100 feet for the two applicants could easily be within the uncertainty of the models and any specific low signal levels could only be resolved via detailed drive tests;

15) Abutters appeared to feel less negative about a 100 foot tower; and

16) There was an alternative equivalent or an even superior technical solution through the combination of the T3 site and the St. Anne's water tank. The sum of the two locations would provide coverage for both Route 20 and the Massachusetts Turnpike, while also providing additional coverage above the single tower placement at the Clark Road location.

The Special Permit Granting Authority granted the above Special Permit based on the following reasons:

1) That the use is in harmony with the intent and purpose of the Zoning Bylaws because the Town of Sturbridge voted at its 1999 Annual Town Meeting to approve the site at 126 Clark Road as part of its Wireless Communication Overlay District.

2) That the use met the other provisions of the Zoning Bylaw for issuance of a Special Permit because a 100 foot tower provided viable coverage as was requested by the applicant.

3) The Town's technical consultant supported this conclusion; and it had not been disputed by the applicant.

4) The applicant could come back to the Special Permit Granting Authority to add other sites and the applicant has complied with most of the Town's Bylaws contained in Chapter Twelve, Section 12.03 (c).

The Special Permit Granting Authority voted to grant the Special Permit with the following conditions, safeguards and limitations –

1) After the wireless communications facility is operational, Green Mountain Realty Corp. shall submit, within ninety (90) days of beginning operations, and at annual intervals from the date of issuance of the special permit, existing measurements of Radio Frequency Radiation (RFR) from the wireless communication facility. Such measurements shall be signed and certified by a Radio Frequency (RF) engineer, stating that RFR measurements are accurate and comply with the standards of the Federal Communications Commission (FCC), with a copy received by the Zoning Board of Appeals no later than January 1st of each year;

2) Green Mountain Realty Trust Corp. shall maintain the wireless communication facility in good condition. Such maintenance shall include, but shall not be limited to, painting, structural integrity of the mount and any security barrier and maintenance Massachusetts General Laws, Chapter 40A, Section 17;

3) If a licensed carrier plans to abandon or discontinue operation of the wireless communication facility, such carrier shall notify the Town by certified U.S. mail of the proposed date of abandonment or discontinuation of operations. Upon abandonment or discontinuance of use, the carrier shall physically remove the wireless communication facility within ninety (90) days from the date of abandonment or discontinuance of use. "Physically Remove" shall include, but shall not be limited to:

   a) Removal of antennas, mount, equipment shelters and security barriers from the subject property.

   b) Proper disposal of the waste materials from the site in accordance with local and state solid waste disposal regulations.

   c) Restoring the location of the wireless communication facility to its natural condition, except that any landscaping and grading shall remain in the "after" condition;

4) If the Tower is not operated for a continuous period of twelve (12) months it shall be considered abandoned, and the owner of such Tower and Facility shall remove same within ninety (90) days of receipt of notice from the Zoning Board of Appeals notifying the owner of such abandonment. If such Tower or Facility is not removed within said ninety (90) days, the Zoning Board of Appeals may cause such Tower or Facility to be removed at the owner's expense. If there are two or more users of a single Tower, then this condition shall not become effective until all users cease using the Tower;

5) A performance bond must be issued to the Town from a surety company authorized to do business in Massachusetts and satisfactory to the Town of Sturbridge in an amount equal to the cost of removal of any and all Towers from the premises and for the repair of such premises and restoration to the condition that the premises were in at the onset of the lease. Said amount shall be determined at the discretion

of the Planning Board. The amount of the bond shall be the total estimate of restoration costs and anticipated fees (in today's dollars) by the applicant's engineer, plus an annual increase of three (3) percent for the term of the lease. The term of the bond shall be for the term of any lease plus twelve (12) months. The Town must be notified of any cancellation or change in the terms or conditions of the bond;

6) The Special Permit shall lapse in one (1) years unless substantial use or construction has commenced by such date. A written request for an extension of time can be made to the Zoning Board of Appeals. Such construction, once begun, shall be actively and continuously pursued to completion within a reasonable time. This two-year period does not include time as required to pursue or await the determination of an appeal from the granting of this special permit;

7) Up to two (2) carriers and their related accessory equipment and structures are allowed under this approval. Any future extension or addition of a wireless communications facility beyond the two (2) authorized by this approval, or construction of new or replacement Towers or stealth facilities shall be subject to an amendment of the Special Permit following the same procedure as for an original grant of a Special Permit;

8) Any modification of this wireless communication facility may be considered equivalent to an application for a new wireless communication facility and would require a Special Permit and Site Plan Approval as stated in Section 12.07 MODIFICATIONS of the Sturbridge Zoning Bylaws; and

9) All applicable provisions in Sturbridge's Zoning Bylaws shall be adhered to.

Any appeal to this decision must be made to the Superior Court within twenty (20) days after the filing of this decision with the Town Clerk, in accordance with Massachusetts General Laws, Chapter 40A, Section 17.

I hereby certify that this is the decision of the Town of Sturbridge Zoning Board of Appeals, and that copies of this decision and all plans referred to herein have been filed this day with the Town Clerk and Planning Board of the Town of Sturbridge.

For the Zoning Board of Appeals:

_____   Jan 21, 2004
Patricia Jeffries, Vice Chairman        Date

_____   _____
Theophile Beaudry                  Mary Blanchard

_____   _____
Jeffrey Bonja                      Robert Cornoni

Cc:   Green Mountain Realty Corp.
      Nextel Communications of the Mid-Atlantic, Inc.
      Omnipoint Holding, Inc.
      Daniel and Nancy Ryder

*(Copies to be sent to the petitioner/applicant/appellant and owner, if different, to other parties so requesting at the Public Hearing and with the Sturbridge Town Clerk and Planning Board.)*

TOWN OF STURBRIDGE
OFFICE OF THE TOWN CLERK

CERTIFICATION OF NO APPEAL

Case number 09-10-03-1
Green Mountain Realty Corp.
Special Permit

I, Lorraine Murawski, Town Clerk for the Town of Sturbridge, hereby certify that twenty (20) days have elapsed since the filing with my office of the above decision on January 22, 2004 by the Zoning Board of Appeals and that no appeal concerning said decision has been filed or that any appeal that has been filed has been dismissed or denied.

_____                    _____
           Date                                                              Town Clerk

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

WORCESTER COUNTY REGISTRY OF DEEDS
RECORDING CERTIFICATION

Received _____, 2004 at _____ o'clock and _____ minutes ___.M. and entered with the Registrar of Deeds in the County of Worcester, Book _____ Page _____.

Attest: _____
                         Registrar of Deeds

A TRUE COPY
ATTEST: *Lorraine Murawski*
TOWN CLERK

04-40021

JS 44 (Rev. 3/99)         **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Green Mountain Realty Corp.

**DEFENDANTS** The Town of Sturbridge, Massachusetts, the Zoning Board of Appeals of the Town of Sturbridge and Ginger Peabody, Theophile Beaudry, Mary Blanchard, etal

(b) County of Residence of First Listed Plaintiff  Carroll (NH)
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Worcester
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Steven E. Grill, Esquire, Devine, Millimet & Branch, PA, P.O. Box 719, Manchester, NH, 03101; (603) 669-1000

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 863 DIW C/DIW W (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | **Habeas Corpus:** ☐ 530 General | ☐ 740 Railway Labor Act | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | ☐ 871 IRS —Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 332

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE 2-11-04         SIGNATURE OF ATTORNEY OF RECORD  /s/ Steven E. Grill

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04-40021-

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)  Green Mountain Realty Corp. v. The Town of Sturbridge, Massachusetts, et al.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

FILED
CLERKS OFFICE
2004 FEB 11  P 2: 39
U.S. DISTRICT COURT
DISTRICT OF MASS.

____  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

  X   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

____ III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

____ IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

____ V.     150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.   No

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?      YES ☐     NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 U.S.C. §2403)   YES ☐   NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                 YES ☐   NO ☒

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 U.S.C. §2284?      YES ☐   NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                                 YES ☐   NO ☒

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      EASTERN DIVISION ☐     CENTRAL DIVISION ☐     WESTERN DIVISION ☐

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

      EASTERN DIVISION ☐     CENTRAL DIVISION ☒     WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Steven E. Grill, Esquire
ADDRESS  Devine, Millimet & Branch, P.A., P.O. Box 719, 111 Amherst Street, Manchester, New Hampshire, 03105-0719
TELEPHONE NO.  (603) 669-1000

(Category Form (M0298639.WPD;1) - 11/27/00)